IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ASHLEE STEIN | ) |
| Plaintiff, | ) Civil Action No. 13-cv-1336 |
| vs. | ) |
| MONTEREY FINANCIAL SERVICES, INC., *et al.* | ) |
| Defendant. | ) |

**DEFENDANT MONTEREY FINANCIAL SERVICES, INC.'S
REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT DISMISSING THE PLAINTIFF'S CAUSE OF ACTION
PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT**

Brendan H. Little, Esq. (Admitted *Pro Hac Vice*)
Lippes Mathias Wexler Friedman LLP
Attorneys for Defendant
Monterey Financial Services, Inc.
665 Main Street, Suite 300
Buffalo, NY 14203
P: 716-853-5100
F: 716-853-5199
blittle@lippes.com

Defendant Monterey Financial Services, Inc. ("MFS") submits this brief in reply to Plaintiff Ashlee Stein's ("Plaintiff") opposition to MFS's Motion for Summary Judgment (Doc. 35) to dismiss Plaintiff's causes of action pursuant to the Telephone Consumer Protection Act (the "TCPA"). For the reasons set forth below, MFS's Motion should be granted in its entirety. Here, Plaintiff does not dispute that she provided MFS with her mobile number, but instead claims that her voluntary production did not constitute "express consent" under the TCPA. It is well settled, however, that, contrary to Plaintiff's position, "a person who knowingly provides [her] telephone number to a <u>creditor</u> in connection with a debt is agreeing to allow the creditor to contact [her] regarding his debt, regardless of the means." <u>Ranwick v. Tex. Gila, LLC</u>, 2014 U.S. Dist. LEXIS 108924 (D. Minn. Aug. 7, 2014) (emphasis added). Here, the Court must determine if Plaintiff, in providing her mobile number to MFS, provided consent. As explained below, the Court must answer in the affirmative. Accordingly, Plaintiff's TCPA claim fails as a matter of law and as result, Plaintiff lacks standing to represent a class and thus, Plaintiff's class claims should likewise be dismissed.

## ARGUMENT

**Point I: Plaintiff provided MFS with Prior-Express Consent.**

In 2008, the Federal Communications Commission (the "FCC") issued a declaratory ruling clarifying that "autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor <u>in connection</u>

1

with an existing debt are permissible as calls made with the 'prior express consent' of the called party." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* (2008), 23 F.C.C. Rcd. 559 at ¶ 1 (emphasis added) (the "2008 FCC Ruling"). The FCC further concluded, "the provision of a cell phone number to a creditor reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." Id. at ¶ 9. In opposing summary judgment, Plaintiff attempts to cavil by arguing that because Plaintiff provided her cell phone number to MFS, not the original creditor, MFS's reliance on the 2008 FCC Ruling and the clear and unequivocal language of the TCPA fails. Pursuant to the decisional authority cited below, it is Plaintiff's argument, however, that falls flat.

It is well-settled that consent to call a particular telephone number in connection with a particular debt, before the call in question occurs, amounts to prior express consent. See Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036 (9th Cir. 2012). Contrary to Plaintiff's argument, "[n]owhere in the FCC's [2008] ruling did it state that a phone number must be given at the time the account is opened to constitute 'prior express consent.'" Moore v. Firstsource Advantage, LLC, 2011 U.S. Dist. LEXIS 104517 (W.D.N.Y. Sept. 15, 2011); *see also* Hill v. Homeward Residential, Inc., 2014 U.S. Dist. LEXIS 115106 (S.D. Ohio Aug. 19, 2014) ("Plaintiff argues…he did not provide express consent to call his cell phone at the time he initially incurred the underlying debt. Common sense and persuasive

2

authority compel this Court to join those courts that have rejected such an argument…"); Sharp v. Allied Interstate Inc., 2014 U.S. Dist. LEXIS 40256 (W.D.N.Y. Mar. 25, 2014) ("it would strain logic to conclude that a debtor's voluntary provision of a contact number at the time an account is opened would constitute 'prior express consent,'…but that the equally voluntary provision of a contact number sometime after the account is opened would not."). In fact, the District Court in Balschmiter v. TD Auto Finance, LLC, 2014 U.S. Dist. LEXIS 163771 (E.D. Wisc. Nov. 20, 2014) made clear that the provision of a cell phone number to a creditor at a time other than during the origination of the debt, but prior to the call(s) at issue, can, contrary to Plaintiff's argument, amount to prior express consent. Id. at *29. In rejecting the plaintiff's argument that the relevant transaction for purposes of prior express consent under the TCPA is the origination of the loan or debt, and only the origination thereof, the District Court determined that "one reasonable interpretation of the FCC's use of 'transaction,' is that during the time the consumer is still in the 'process of doing business' with the creditor – i.e. by making payments, inquiring about the debt, etc. – the consumer's provision of a number to the creditor can express consent to be autodialed at that number." Id. at *26. After criticizing the FCC for failing to clarify this issue, the District Court denied the plaintiff's motion seeking to certify a class.

The present case is on all fours analogous to Sartori v. Susan C. Little & Assocs., P.A., 571 Fed. Appx. 677 (10th Cir. 2014). In Sartori, the District Court

3

determined that it was undisputed that the plaintiff provided, in the normal course of business, his cell phone for calls concerning his loan. The District Court noted:

> [i]t is also unchallenged that [the defendant] received a phone call from [the plaintiff] on February 4, 2009, and that in the normal course of business, the [plaintiff] provided an updated phone number for the [the defendant] to call him concerning the loan at the 336 cell phone number. [The plaintiff] did not provide evidence that he revoked consent he gave on February 4, 2009, and he never requested, either verbally or in writing, that [defendant] stop calling this number.

Sartori v. Susan C. Little & Assocs., 2013 U.S. Dist. LEXIS 117109 (Dist. N.M. June 27, 2013). In affirming the District Court's dismissal of the plaintiff's TCPA claim, the Tenth Circuit found that the record unequivocally demonstrated that the defendant's records showed that the plaintiff called the defendant and provided his cell phone number to the defendant because the defendant was unable to reach him at the prior number listed on the account. The Tenth Circuit held that pursuant to the 2008 FCC Ruling, the plaintiff's action constituted "prior express consent." *See also* Brenner v. American Education Services, 575 Fed. Appx. 703 (8th Cir. 2014) (finding that the plaintiff, in voluntarily providing his cell phone number to the defendant on subsequent forbearance requests, amounts to express consent to receive the type of calls made)[1]; Renwick, *supra*.

In this case, identical to the facts in Sartori, it is undisputed that Plaintiff voluntarily provided her mobile telephone number to MFS on August 28, 2012

---

[1] Although the Court of Appeals vacated the District Court's grant of summary judgment to determine whether the plaintiff revoked his consent, the Eighth Circuit nonetheless agreed with the District Court's analysis insofar as prior express consent is consent to call a particular telephone number in connection with a particular debt that is given before the call in question is placed. Brenner, *supra*, at 703.

4

when she initiated the call to MFS. Although Plaintiff's self-serving Affidavit claims that she only provided her mobile number for a limited purpose (Stein Aff., ¶¶ 7-8), the recording of the conversation is devoid of such facts.[2] Contrary to Plaintiff's conclusions, she did not put any limitations on the use of her mobile number. In providing her mobile number, Plaintiff provided MFS with express consent to be contacted at that number. *See* Sartori, *supra*; Rankin, *supra*. As set forth in MFS's Account Notes, any phone calls placed to Plaintiff's mobile number using an automatic dialing system were placed after August 28, 2012 (date of consent). Because Plaintiff provided prior express consent before any calls were placed using an autodialer, MFS did not violate the TCPA. *See* Sartori, *supra*; Rankin, *supra*.

Plaintiff's reliance on Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110 (11th Cir. 2014) is misplaced as its holding actually supports MFS's position. In Mais, the plaintiff filed a claim against a creditor and its debt collection agent for making autodialed calls in violation of the TCPA. In reversing the District Court and granting defendant summary judgment, the Eleventh Circuit held that the lower court did not have the authority to review the validity of the 2008 FCC Ruling. In doing so, the court rejected plaintiff's contention that the 2008 FCC Ruling only applies when the cell phone number is given directly to the original creditor. Despite Plaintiff's misguided dependence, the court, citing other FCC

---

[2] Provided to the Court at Doc. 35, Ex. C.

5

rulings, explained "the appropriate analysis turns on whether the called party granted permission or authorization, not on whether the creditor received the number." Id. at 1123-1124. Accordingly, by way of Plaintiff's own admissions, the Court must find that Plaintiff provided MFS with prior express consent.

The case at bar is also distinguishable from Nigro v. Mercantile Adjustment Bureau, 769 F.3d 804 (2d Cir. 2014), on which Plaintiff relies. In Nigro, the plaintiff contacted his deceased mother-in-law's utility company to discontinue electric service at her apartment. At that time, there was an unpaid balance on the mother-in-law's account in which the plaintiff was neither aware of nor responsible for. The utility company told the plaintiff that a phone number was necessary to disconnect service and the plaintiff complied by providing the company with his mobile telephone number. In granting defendant's motion for summary judgment, the district court found that the plaintiff consented to subsequent calls when he contacted the utility company to discontinue his mother-in-law's electricity. On appeal, the Second Circuit reversed the district court's grant of summary judgment and held that, under the FCC's interpretation of the statute, the plaintiff (who is not the debtor) did not consent because his number was not "provided during the transaction that resulted in the debt owed." Id. at 806. Importantly, Plaintiff's counsel failed to inform this Court that the Second Circuit further opined:

> We do not decide what the outcome would be if a consumer were to open an account with a creditor and initially provide only his home phone number, but later in the course of the relationship provide a

6

wireless number. Whether a subsequently given phone number is given as part of a continuing "transaction," or a transaction separate from the initial one that "resulted in the debt owed," is a question for future courts.

Id. at n. 4.; *see also* Balschmiter, *supra* (emphasizing the Second Circuit footnote).

Likewise, Plaintiff's reliance on two District Court cases from Florida is also misplaced.[3]

To the contrary, in this case, after initiating the call with MFS, Plaintiff voluntarily provided her mobile telephone number to MFS. Given that the FCC emphasized that the relevant issue in evaluating "prior express consent" is whether a phone number has been voluntarily provided, Plaintiff cannot genuinely assert that she did not provide MFS with consent to be contacted on her mobile telephone number, and thus any claim that MFS violated the TCPA is entirely without merit. *See* 23 F.C.C. Rcd. 559 at ¶ 9.

**Point II: No genuine issues of material fact exist as to whether MFS attempted to contact plaintiff on her mobile phone number prior to August 28, 2012.**

MFS does not dispute that it attempted to contact Plaintiff prior to August 28, 2012, however, the record is devoid of any evidence that MFS contacted Plaintiff on her mobile telephone using an automatic dialer prior to that date.

---

[3] In Breslow v. Wells Fargo Bank, N.A., 857 F. Supp.2d 1316 (S.D. Fla. Apr. 26, 2012) *vacated by* 755 F.3d 1265 (11th Cir. 2014), the plaintiff received auto-dialed calls on her mobile telephone because the prior owner of the telephone number had previously consented to receiving such calls. The Eleventh Circuit affirmed the District Court's granting of summary judgment on the plaintiff's TCPA claim because despite the fact the prior owner had consented to receiving auto-dialed messages at the number now owned by the plaintiff, the plaintiff herself had not consented. Of course, those facts are entirely inapposite from the facts here. In Hines v. CMRE Fin. Servs., Inc., 2014 U.S. Dist. LEXIS 3017 (S.D. Fl. Jan.10, 2014), the plaintiff's mobile telephone number was stolen from a form he provided to the hospital and he never provided his mobile number to the doctors who treated him or the doctors' contractor who attempted to collect on the outstanding debt.

MFS's Account Notes reveal that it learned of Plaintiff's mobile number on April 30, 2014. See Doc. 36, Ex. B. Once MFS obtained Plaintiff's mobile number, MFS placed two <u>manually dialed</u> calls to said number. See a copy of Alicia Ratkoczy's deposition transcript, 34:8-24 attached hereto as **Exhibit A**.

While MFS learned of Plaintiff's mobile number on April 30, 2012 (Ratkoczy, 16:22-25 and 17:1-14), MFS did not, nor could it, use an automatic dialer to contact Plaintiff on her mobile phone on this same date. As set forth in the Lucas Declaration (Doc. 36, Ex. A), MFS loads all the telephone numbers into the automatic dialer the night before the automatic dialer will actually dial the telephone numbers that were loaded in. Doc. 36, Ex. A, ¶ 17. In other words, all of the telephone numbers the automatic dialer would dial on April 30, 2012, would had to have been loaded into the automatic dialer on April 29, 2012. Thus, when MFS acquired Plaintiff's mobile number on April 30, 2012, the automatic dialer could not have dialed Plaintiff's mobile number because MFS did not have said mobile number on April 29, 2012. Doc. 36, Ex. A at ¶¶ 18-19.

Plaintiff's attempt to misrepresent the facts surrounding the April 30, 2012 auto-dialed call to a number other than Plaintiff's mobile number is unavailing and fails to raise a triable question of fact. MFS does not dispute that it used an automatic dialing system in attempt to collect on Plaintiff's account on April 30, 2012, but other than Plaintiff's unsupported speculation, the record is entirely devoid of any evidence that the number auto-dialed by MFS was Plaintiff's mobile

8

number or even belonged to Plaintiff whatsoever. In fact, the Declaration of Shaun Lucas, MFS's Vice President of Operations, outlines what occurred on April 30, 2012 and references the three recordings in MFS's possession dated April 30, 2012. Mr. Lucas' Declaration is attached hereto as **Exhibit B**. The recording of the first manually dialed call on April 30, 2012 is attached hereto as **Exhibit C**. The recording of the second manually dialed call on April 30, 2012 is attached hereto as **Exhibit D**. The recording of the auto-dialed call on April 30, 2012 is attached hereto as **Exhibit E**. As set forth in Mr. Lucas' Declaration and in the recording itself, the auto-dialed call on April 30, 2012 indisputably demonstrates that the call was placed to "Steve" and not to the Plaintiff's mobile telephone.

Although the recordings were produced to Plaintiff's counsel in discovery, Plaintiff nonetheless contends that MFS's Accounts Notes demonstrate that it contacted Plaintiff's mobile number using an automatic dialer. However, Plaintiff's conclusion is nothing more than rank speculation, which does not create a genuine issue of fact. *See generally* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). Nothing in the entry highlighted by Plaintiff suggests that the auto-dialed call was to Plaintiff's mobile number. As noted above, the entry only demonstrates that the auto-dialed call was transferred to the live collector. Accordingly, Plaintiff is making a huge leap without factual support in an attempt to keep her TCPA claim afloat "[a]nd unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." Dennis v. Reg'l

9

Adjustment Bureau, Inc., 2010 U.S. Dist. LEXIS 144776 (S.D. Fl. July 6, 2010) (dismissing the plaintiff's TCPA claim because the plaintiff's unsubstantiated conclusions fail to raise a triable question of fact). Although Plaintiff continues to proffer a theory why she believes her mobile number was auto-dialed on April 30, 2012, Plaintiff fails to address the recording that summarily disposes of its unsubstantiated theory. Moreover, Plaintiff's own telephone records produced by Verizon in response to a subpoena fail to demonstrate that the Plaintiff received a telephone call from MFS on April 30, 2012. See **Exhibit F**.

## CONCLUSION

In light of the foregoing, it is clear and unequivocal that the Plaintiff provided consent on August 28, 2012 and MFS's motion for summary judgment seeking the dismissal of the Plaintiff's TCPA claim, including the class allegations, against MFS should be granted in its entirety.

DATED: December 17, 2014

        **LIPPES MATHIAS WEXLER FRIEDMAN LLP**

        /s Brendan H. Little
        Brendan H. Little, Esq. (Admitted *Pro Hac Vice*)
        Attorneys for Defendant
        Monterey Financial Services, Inc.
        665 Main Street, Suite 300
        Buffalo, NY 14203
        P: 716-853-5100
        F: 716-853-5199
        blittle@lippes.com