FILED
2017 Jan-31  AM 08:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ASHLEE STEIN, individually and on behalf of a class of persons similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | Civil Action Number **2:13-cv-01336-AKK** |
| MONTEREY FINANCIAL SERVICES, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Ashlee Stein filed this lawsuit against Monterey Financial Services, Inc.,

Experian Information Solutions, Inc., and Equifax Information Services, L.L.C.,

asserting seven claims in her individual capacity.[1]   Stein voluntarily dismissed

Experian and Equifax, leaving Monterey as the sole defendant.  *See* docs. 21; 22;

23; 24.  Stein subsequently filed a motion to amend her complaint to add a class

claim under the TCPA, which the court granted.  *See* docs. 26; 31.  Monterey then

moved for summary judgment as to Stein's individual and class TCPA claims.

Doc. 35.  The court denied Monterey's motion and entered a scheduling order

---

[1] Stein's individual claims include alleged violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 *et seq.* ("TCPA") (Count I); Negligent, Reckless, Wanton, Malicious, and/or Intentional Conduct (Count II); Negligent Hiring, Training, and/or Supervision of Employees and/or Agents (Count III); Invasion of Privacy by Intrusion Upon Seclusion (Count IV); Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") (Count V); Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") (Count VI); and Defamation (Count VII).  *See* doc. 1.

which, among other things, allotted one year for class discovery.  Docs. 50; 52.

Presently before the court is Stein's motion for class certification.  Doc. 63.  The

motion is fully briefed, docs. 63; 69; 74, and, with the benefit of oral argument,

ripe for ruling.  For the reasons stated more fully below, the court concludes that

the motion is due to be denied.[2]  Accordingly, this matter is **SET** for a pretrial

conference at 1:00 p.m. on February 17, 2017, and for trial at 9:00 a.m. on March

27, 2017, both in Courtroom 4A of the Hugo L. Black Courthouse, 1729 Fifth

Avenue North, Birmingham, AL 35203.  The court directs the parties to the

Standard Pretrial Procedures governing all pretrial deadlines, which is attached as

Exhibit A.

## I.   FACTUAL BACKGROUND

Sometime before August 2012, Stein discovered that her credit report

reflected an outstanding debt for a "Luminess Air" account that Stein did not

recognize or recall creating, and which Monterey had acquired for collection.  *See*

doc. 43-2 at 3.  Subsequently, on August 28, 2012, after obtaining Monterey's

number from the credit reporting agency, Stein contacted Monterey "to find out

why this account [she] knew nothing about was showing up on [her] credit

reports."  *Id.*; doc. 43-3 (recording of August 28, 2012 phone call at 1:28, 3:43).

---

[2] Stein's motion to strike, doc. 71, and Monterey's motion for leave to file a sur-reply, doc. 77, are **DENIED**.  Monterey's motion for leave to file notice of supplemental authority, doc. 83, is **GRANTED**.

When Laurisa Fernandez answered Stein's call, Stein explained that she had "never ordered anything" from Luminess Air and was calling to "see what was on the account." Doc. 43-3 at 3:43. After Fernandez located Stein's account in the Monterey database, and before offering any additional information about the account, Fernandez asked Stein to verify her mailing address and asked, "What's a good home phone number for you?" *Id.* at 5:00. Stein responded by verifying her address and providing her cell phone number. *Id.* at 5:03. Fernandez then asked whether the number from which Stein was calling was a "good number" to reach her, and Stein responded, "no." *Id.* at 5:08.

At this point, Fernandez informed Stein that her account reflected an outstanding balance of $397.94 for the purchase of an "airbrush makeup kit" from Luminess in 2010, which was transferred to collection in April 2012. *Id.* at 5:13, 9:47. Confused as to how she incurred the debt, Stein asked a series of questions about the purchase and learned that the credit card used to purchase the makeup kit was a Mastercard in Stein's name, but which had a different last four digits than those on the Mastercard in Stein's possession at the time of the call. *Id.* at 5:30–9:39. At one point during the conversation, Stein stated that perhaps her mother had purchased the makeup kit on Stein's credit card, adding that her mother "would do something like that and not even tell [her]." Doc. 43-3 at 6:47–6:52. Ultimately, Stein stated that she "didn't want . . . [the charge] on her credit" and

3

that she would like to "set up payments so that can be taken care of." *Id.* at 7:10.

Fernandez subsequently provided instructions for sending payment to Monterey,

which concluded the telephone conversation. *Id.* at 7:16–11:47.

"[A]fter thinking more about the situation" and speaking with a lawyer about

whether she should "pay for this debt that was not [hers] and that [she] did not

owe," Stein changed her mind and chose instead to "dispute the account with the

credit reporting companies."  Doc. 43-2 at 4.  Apparently, Stein never conveyed

this to Monterey, because Monterey attempted to collect the debt by continuously

using an automatic dialer to call Stein on her cell phone.  Doc. 36-1 at 5.  Between

August 28, 2012 and July 18, 2013 (when Stein initiated this lawsuit), Stein

received over thirty auto-dialed calls and numerous prerecorded voicemails from

Monterey debt collectors.  *See* doc. 43-1 at 4–6.

## II.    CLASS CERTIFICATION STANDARDS

Federal Rule of Civil Procedure 23 outlines the requirements for class

certification.  As a threshold matter, a district court should determine whether the

proposed class is "adequately defined and clearly ascertainable." *Little v. T-Mobile*

*USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting *DeBremaecker v. Short*,

433 F.2d 733, 734 (5th Cir. 1970)) (internal quotation marks omitted); *see also*

*John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The

existence of an ascertainable class of persons to be represented by the proposed

class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."). Only if the court determines that this threshold requirement is met must it then address the question of whether the four Rule 23(a) prerequisites are satisfied. These prerequisites, commonly referred to as the numerosity, commonality, typicality, and adequacy requirements, are "designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims," *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003) (citing *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000)), and "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence," *Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (quotations and citations omitted).

If the plaintiff establishes the Rule 23(a) prerequisites, the analysis then shifts to Rule 23(b), which requires, in pertinent part, that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Sher v. Raytheon Co.*, 419 F. App'x 887,

889 (11th Cir. 2011) (citing *Falcon*, 457 U.S. at 161).  While class certification naturally focuses on the requirements of Rule 23, "the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied."  *Valley Drug Co.*, 350 F.3d at 1188 n.15.  Finally, "the party *seeking* class certification has the burden of proof," *Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1233 (11th Cir. 2016) (citing *Valley Drug. Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003)) (emphasis in original), and "if doubts remain about whether the standard [for certification] is satisfied, 'the party with the burden of proof loses.'"  *Brown*, 817 F.3d at 1233 (quoting *Simmons v. Blodgett*, 110 F.3d 39, 42 (9th Cir. 1997)).

## III.   ANALYSIS

Turning to the present motion, the TCPA makes it unlawful "to make any call (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . ." 47 U.S.C. § 227(b)(1)(A).  Stein seeks to certify a class of "[a]ll persons within the United States to whom Monterey placed an ATDS-to-cellular debt-collection call between February 13, 2013 and July 17, 2013, and who did not provide their cellular numbers to their creditors during the transaction that resulted in the debt owed."  Doc. 63 at 8.  Stein insists that she can ascertain the members of this proposed class by having Monterey identify "all ATDS-to-cellular calls it made

6

during the statutory period," and then removing all potential class members who consented to receiving the calls by having Monterey identify "any [call recipients] who had provided their cellular phone numbers to their creditors during the transaction resulting in the debt owed." *Id.*

The parties have primarily focused on whether Stein's theory of consent is too narrow or, stated differently, does not exclude from the proposed class all persons who validly consented to receiving debt-collection calls from Monterey.[3] The court does not have to resolve which party's consent theory is "correct," however, due to Stein's failure to rebut a secondary argument Monterey presented: *i.e.*, that Stein proposes no feasible method for removing persons who received *non-debt-collection* calls from the pool of proposed class members. *See* doc. 69 at 19; Transcript from Dec. 19, 2016 Oral Argument at 38–39. Because a plaintiff has the burden of "propos[ing] an administratively feasible method by which class members can be identified," *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 947 (11th Cir. 2015), for reasons explained more fully below, the court concludes that Stein cannot satisfy Rule 23's implied ascertainability requirement and Rule 23(a)(3)'s typicality requirement. Alternatively, the court finds that, regardless of

---

[3] Specifically, while Stein contends that a consumer may provide consent only to her original creditor during the transaction giving rise to the debt, doc. 63 at 5, Monterey contends that a consumer may also provide consent to a third party and may do so after the underlying transaction, as long as the consumer does so "in connection with" the debt, doc. 69 at 9.

the operative consent theory, individualized consent issues render the proposed class unsuitable for certification under Rule 23(b)(3).

## A. Ascertainability and Typicality

Monterey points out that "in addition to acting as a debt collector, [it] also services non-delinquent accounts as a creditor or loan servicer," and, consequently, "there are an unknown number of alleged class-members that received calls from [Monterey], but did not receive them from a debt collector." Doc. 69 at 19. Monterey contends that Stein "ignores this distinction and fails to offer any criteria to ascertain these individuals," thereby rendering the proposed class unascertainable. *Id.*

Stein apparently agrees that the court should deny certification if the parties cannot easily identify and remove persons to whom Monterey placed non-debt-collection calls. Indeed, at least one panel of the Eleventh Circuit, albeit in an unpublished opinion, has held that a district court should not certify a class when the evidence of record does not allow the court to identify *only* persons encompassed by the proposed class definition. *See Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 788 (11th Cir. 2014). However, Stein counters that the tripartite nature of Monterey's business "presents no obstacle to ascertainability" since Monterey's calls are organized by division, and, presumably, she can carve out the relevant class members, *i.e.*, the individuals to

8

whom Monterey placed debt-collection calls.  Doc. 74 at 8–9 (citing doc. 74-3 at

3–4); *see* also doc. 63 at 8.  Relevant here, Monterey's representative Shaun Lucas

testified that there are "different companies within Monterey," referencing "C10

[finance]," "C11 [debt collection]," and "C12 [loan servicing]" divisions.  Doc. 74-

3 at 3–4.  Lucas also testified that Monterey's "*core business* is to buy performer

receivables [*i.e.*, the C10 category]," *id.* at 3 (emphasis added), but that Luminess

Air, the entity on whose behalf Monterey attempted to collect a debt from Stein,

"happens to be a collection agency [*i.e.*, a C11] client," *id.* at 4.[4]  Finally, and

significantly, Lucas testified that these designations may be fluid and/or that some

proposed class members could have multiple designations, as an account could be

"generated in [one of the] other two divisions, finance or loan servicing,

defaulted[,] and later transferred to [Monterey's] collection agency."  Doc. 69-1 at

96; *see also* doc. 63-2 at 9.

---

[4] The undisputed evidence that debt-collection comprises only a minority of Monterey's business undermines Stein's ability to prove typicality under Rule 23(a)(3) if she cannot propose a feasible method for removing persons who received C10 and C12 calls.  "[T]ypicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large."  *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008). *Cf. Sharf v. Fin. Asset Resolution, L.L.C.*, 295 F.R.D. 664, 670 (S.D. Fla. 2014) ("Plaintiff argues that he has established typicality because Plaintiff and the members of the class suffered from a common practice Defendant employed, namely its issuance of form *debt collection* letters.  The Court agrees with Plaintiff that the sending of form *debt collection* letters demonstrates typicality.") (emphasis added).  Without proposing an effective filtering method, Stein faces an uphill battle in establishing that her claims are typical of the proposed class at-large, or, stated differently, that Monterey engaged in the same conduct vis-à-vis Stein and the unnamed class members.

Although Stein contends that the parties can distinguish each call by a consumer account's C10, C11, or C12 designation, she proposes no plan, based on the evidence obtained during class discovery, for doing so. Instead, Stein attempts to shift the burden to Monterey, stating in conclusory fashion that "if [non-debt collection calls] actually exist, they can be easily identified and filtered out of the class list," doc. 74 at 9, and that "if Monterey can show that . . . persons [for whom Monterey acts as a loan servicer or creditor] exist, the simple process of removing them from the class will assuage any concerns about typicality," *id.* at 9 n.2. These contentions miss the mark because, again, "'[t]he burden of establishing the [Rule 23 requirements] is on the plaintiff who seeks to certify the suit as a class action.'" *Karhu*, 621 F. App'x at 947 (quoting *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997)). Moreover, "[a] party's assurance to the court that it intends or plans to meet the requirements [of Rule 23] is insufficient." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2008) (citing *Newton v. Merill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 191 (3d Cir. 2001) ("[W]here the court finds, on the basis of substantial evidence as here, that there are serious problems now appearing, it should not certify the class merely on the assurance of counsel that some solution will be found.") (internal quotation marks omitted)). To succeed, the moving plaintiff "must affirmatively demonstrate [her] compliance with Rule 23 by proving that the requirements are '*in fact*' satisfied." *Brown*, 817

10

F.3d at 1234 (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013), in turn quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)) (emphasis in original, some internal quotation marks omitted).   Conclusory statements similar to those by Stein that a class is ascertainable are insufficient to meet the moving plaintiff's burden.  *See In re Wellbutrin XL Antitrust Litig.*, 308 F.R.D. 134, 151 (E.D. Pa. 2015) ("The [plaintiffs'] evidence in support of ascertainability consists mainly of conclusory statements by its experts that records exist that could be used to ascertain the class . . . . This evidence is not enough to show by a preponderance of the evidence that the class is ascertainable."); *see also Hill v. T-Mobile USA, Inc.*, No. 2:09-cv-1827-VEH, 2011 U.S. Dist. LEXIS 157669, at *34 (N.D. Ala. May 16, 2011 (class unascertainable when plaintiffs failed to "address[] how to effectively back out from [the proposed class list] those persons who would potentially be ineligible . . . .").

In summary, because a plaintiff seeking certification must propose an administratively feasible method for identifying class members and Stein proposes no specific plan, using the evidence generated during over a year of class discovery, to filter-out potential class members to whom Monterey made C10 or C12 calls, Stein has failed to meet her burden of proving that the proposed class is clearly ascertainable and that her claim — based on C11 calls — is typical of those of the unnamed class members.   Moreover, even if Stein currently possessed

evidence of accounts with C10, C11, or C12 designations, she completely fails to address Monterey's evidence that accounts are often transferred between departments and that some accounts have multiple designations.[5]  Based on this record, Stein would experience difficulty, notwithstanding an account's current designation, in proving what type of call Monterey made to a particular individual on a given date,[6] and in establishing that her claims are typical of the class.  *See Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 598–99 (S.D. Fla. 1991) (named representative must possess "same essential characteristics as the claims of the class at large" to satisfy typicality requirement); *Sharf*, 295 F.R.D. at 670 (citing *Manno v. Healthcare Revenue Recovery Grp., L.L.C.*, 289 F.R.D. 674, 686 (S.D. Fla. 2013)) ("Typicality is generally satisfied when the named representative[], in proving the elements of [her] claim[], would also establish the elements of the

---

[5] The totality of Stein's rebuttal on this point is as follows:

> Monterey's unsupported contention that it may be a creditor or loan servicer to some of the potential class members[] presents no obstacle to ascertainability. Monterey's call records are organized by division.  For example, records of calls made by Monterey's loan servicing division are found on the "C12" dialer. Accordingly, if any such calls actually exist, they can be easily identified and filtered out of the class list.

Doc. 74 at 8–9 (record citations omitted).  This contention does not rebut Monterey's evidence that its accounts may have fluid or multiple designations.

[6] *See* doc. 63-2 at 9 ("[Monterey] has . . . produced a Master Spreadsheet that demonstrates which consumers (by consumer name and [Monterey] account number) [Monterey] has contractual documents/applications for.  In certain instances, multiple [Monterey] account numbers are associated with the same consumer and contractual obligation.  The reason for this is that when accounts are transferred amongst [Monterey's] multiple departments, the account number will change.").

class members' claims."); *Stemple v. QC Holdings, Inc.*, No. 12-cv-01997-BAS(WVG), 2016 U.S. Dist. LEXIS 55011, at *14 (S.D. Cal. Apr. 25, 2016) (typicality requirement satisfied when "Plaintiff's and the unnamed class members' claims ar[ose] from the same alleged conduct of Defendant — unsolicited phone calls for *debt collection purposes* using an ATDS and artificial voice — and [were] based on the same legal theory — violation of the TCPA") (emphasis added).  For these reasons, and because "[a] district court that has doubts about whether 'the requirements of Rule 23 have been met should refuse certification . . . .,'" *Brown*, 817 F.3d at 1233–34 (citation omitted), the court concludes that the proposed class is not ascertainable and, relatedly, that Stein has failed to show that her claims are typical of the class of claimants she seeks to represent.

## B. Predominance of Individualized Consent Issues

Alternatively, even assuming that Stein could satisfy the ascertainability and typicality requirements, Stein cannot show that certification is appropriate under Rule 23(b)(3) due to the predominance of individualized consent issues over any common questions regarding Monterey's course of conduct.  Stein contends that the court would not need to undertake any individualized inquiries under either party's proposed consent theory, because Monterey "obtained consent in the same way, for every class call, by acquiring cellular numbers from the call recipients over the phone," doc. 74 at 13 (emphasis omitted).  As an initial matter, it is not

clear that Monterey *engages in* such a uniform course of conduct.  *Compare* doc.

43-3 at 5:00 (Monterey operator asks Stein, "What's a good home phone number

for you?") *with* doc. 69-2 at 6 (Monterey internal memorandum directing callers to

ask, "Is this a valid contact number?").  Furthermore, even if Monterey callers

asked each debtor the same question, whether a debtor perceived his or her answer

to that question as providing consent to receive subsequent calls is an

individualized inquiry that would require the court to ascertain each debtor's

interpretation, or understanding, of that question.  The facts of Stein's own TCPA

claim exemplify the context-specific nature of consent and undergirded this court's

denial of Monterey's summary judgment motion:

> [I]t is not exactly clear that Stein consented to the calls.  Rather, the
> evidence shows only that immediately after Stein called and explained
> that she had never ordered anything from the creditor and wanted to
> know "what was on her account," the [Monterey] representative asked
> Stein for a "good home phone number" to reach her.  Whether in
> providing her number, Stein was simply facilitating the process of
> learning more about the purportedly mysterious entry on her credit
> report — or, alternatively, consenting to receiving collection calls —
> is an issue best left for a factfinder.

Doc. 50 at 8–9 (record citations omitted).  Because this court would have to

examine consent — a defense Monterey intends to raise against every class

member — on a person-by-person basis, certification is not proper under Rule

23(b)(3), which requires that "questions of law or fact common to class members

predominate over any questions affecting only individual members."  *See* Fed. R.

Civ. P. 23(b)(3); *see also Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*, 601 F.3d 1159, 1170 (11th Cir. 2010) ("A plaintiff may claim that every putative class member was harmed by the defendant's conduct, but if . . . the defendant has non-frivolous defenses to liability that are unique to individual class members, any common questions may well be submerged by individual ones."); *Gene & Gene L.L.C. v. BioPay L.L.C.*, 541 F.3d 318, 326–29 (5th Cir. 2008) (reversing class certification predicated on defendant's "common course of conduct, fax blasting," where the district court "did not explain how th[is] common course of conduct . . . would affect a trial on the merits," and where a trial would in fact require individualized proof as to whether each class member had consented to receipt of faxes).

In light of all of the foregoing, the court will not proceed to analyze the remainder of the requirements set forth under Rules 23(a) and 23(b)(3). *See Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1282 (S.D. Fla. 2012) ("Because the Court is not satisfied that all of the elements of Rule 23(a) have been met, it need not shift to an analysis under Rule 23(b)(3)."); *Adair v. Johnston*, 221 F.R.D. 573, 578 (M.D. Ala. 2004) ("Because Adair's putative class is not adequately definite and ascertainable, class certification should be denied. The court need not reach whether Adair's putative class would satisfy the other requirements of [Rule] 23.").

## IV.    CONCLUSION AND ORDER

In light of Stein's failure to show that the proposed class is clearly ascertainable, that her claims are typical of those of the group of claimants she seeks to represent, and that common questions predominate over individualized consent issues, the motion for class certification, doc. 63, is **DENIED**.

**DONE** the 31st day of January, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

16

EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

PRE-TRIAL DOCKET
HON. ABDUL K. KALLON, PRESIDING

**BIRMINGHAM, ALABAMA**

This case is set for a pre-trial hearing pursuant to Rule 16 of the Federal Rules of Civil Procedure. A conference-type hearing will be held in chambers in the Hugo Black Federal Courthouse in Birmingham, Alabama at the time indicated.

The hearing will address all matters provided in Rule 16, including the limitation of issues requiring trial, rulings on pleading motions, and settlement possibilities.

Counsel attending the conference are expected to be well-informed about the factual and legal issues of the case, and to have authority to enter appropriate stipulations and participate in settlement discussions. <u>Counsel appearing at the conference will be required to proceed at trial notwithstanding the naming of others as designated trial counsel</u>.

Promptly upon receipt of this notice, plaintiff's counsel is to initiate discussions with other counsel aimed at ascertaining which basic facts are not in dispute, at clarifying the parties' contentions (for example, just what is denied under a "general denial") and at negotiating workable procedures and deadlines for remaining discovery matters. <u>At least four (4) business days in advance of the conference, plaintiff's counsel is to submit to chambers (via email at kallon_chambers@alnd.uscourts.gov) a proposed Pre-trial Order inWordPerfect format</u>, furnishing other counsel with a copy. It is anticipated that in most cases the proposed order, with only minor insertions and changes, could be adopted by the court and signed at the close of the hearing.

A sample of a proposed Pre-trial Order is available on the Chamber web site (http://www.alnd.uscourts.gov/content/judge-abdul-k-kallon) to illustrate the format preferred by the court and also to provide additional guidance and

instructions. Each order must, of course, be tailored to fit the circumstances of the individual case.

Counsel drafting this proposed order should consider the utility this document will provide for the litigants, the jury, and the court alike. The court anticipates using the pretrial order to (1) identify and narrow the legal and factual issues remaining for trial, and (2) provide jurors with the legal and factual context of the dispute. This order should **not** revisit at length arguments made in previous filings with the court, nor should it serve as another venue for adversarial posturing. Pretrial orders should be simple, short, and informative.

IN ANY CASE WHERE COUNSEL HAVE ANNOUNCED SETTLEMENT TO THE COURT, A CONSENT JUDGMENT IN SATISFACTORY FORM <u>MUST</u> BE PRESENTED TO THE COURT <u>PRIOR</u> TO THE SCHEDULED TRIAL DATE; OTHERWISE, THE CASE WILL BE DISMISSED<u>WITH</u> PREJUDICE.